AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

FILED
2003 AUG 5 A 9:08
DISTRICT OF MASSACHUSETTS

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA

V.

Andres KALJUVEE (d.o.b. 4/13/66)
Talinn, Estonia
Roman VALDMA (d.o.b. 3/2/66)
Brighton, MA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 03-883-HBB

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about and between February 27, 2003 and June 25, 2003 in Suffolk county, in the District of Massachusetts defendant(s) did, (Track Statutory Language of Offense)

knowingly and willfully combine, conspire, confederate and agree together and with others known and unknown to commit an offense against the United States, to wit, visa fraud, in violation of 18 U.S.C. Section 1546(a), and did commit acts to effect the object of the conspiracy to knowingly possess, obtain, accept and receive a United States non-immigrant visa obtained by fraud and procured by means of false claims,

in violation of Title 18 United States Code, Section(s) 371

I further state that I am a(n) Special Agent and that this complaint is based on the following
                                  Official Title
facts:

See attached affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

August 4, 2003 @ 7:20PM    at    Chestnut Hill Boston, MA
Date                                       City and State

Marianne B. Bowler
Chief U.S. Magistrate Judge                Marianne B. Bowler USMJ
Name & Title of Judicial Officer           Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF BRETT R. RAMSEY

I, Brett R. Ramsey, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the Diplomatic Security Service ("DSS"), United States Department of State, and have been so employed for over one year. I am currently employed in Headquarters, Criminal Investigations Division, Visa Fraud Branch. My responsibilities include the conducting of investigations into criminal violations of the laws governing the issuance of United States visas and other travel documents used to transit international borders. I have previously conducted investigations involving the illegal procurement or use of United States visas. I make this affidavit based upon my training and experience as a Special Agent with the United States Department of State, Diplomatic Security Service and based upon my own knowledge, upon transcripts and documents furnished to me in my official capacity, and information provided by other law enforcement authorities, witnesses, and a cooperating witness ("CW"). This affidavit does not contain every material fact that I have learned during the course of this investigation, however, no information known to me that would tend to negate probable cause has been withheld from the affidavit.

2. This affidavit is submitted in support of a criminal complaint and arrest warrant charging that, between on or about February 27, 2003, and on or about June 25, 2003, Andres Kaljuvee ("Kaljuvee"), date of birth April 13, 1966, and Roman Valdma ("Valdma"), date of birth March 2, 1966, and others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, Title 18, United States Code, section 1546(a), and did commit acts to effect the object of the conspiracy and in furtherance of the conspiracy, to knowingly possess, obtain, accept and receive a United States non-immigrant visa, a document proscribed by statute or regulation for entry into or evidence of stay or employment in the United States, knowing it to have been procured by means of a false claim or statement, or to have been otherwise procured by fraud, that is by the making of false material statements in an application for a non-immigrant visa, in violation of Title 18, United States Code, section 371.

3.  This offense took place in Tallinn, Estonia. Valdma currently resides in Boston, Massachusetts, within the District of Massachusetts. Accordingly, your affiant submits that venue for this offense is proper in the United States District Court for the District of Massachusetts according to the provisions of Title 18, United States Code, Section 3238.

4.  Your affiant has learned that, on February 27, 2003, the Tallinn Police Department in Tallinn, Estonia informed the United States Embassy in Estonia that women residing in Estonia were traveling to the United States on United States visas, possibly to work as strippers, erotic masseuses, and prostitutes. DSS and the Tallinn Police began a joint investigation into these allegations. As part of the investigation, Tallinn Police obtained an Estonian court order to monitor and record telephonic and non-telephonic conversations between the conspirators and the CW, an Estonian national who informed Tallinn police of the conspiracy. According to statements from the CW and transcripts from telephone conversations, Valdma, a naturalized United States citizen and Kaljuvee, an Estonian national, are involved in a scheme whereby they fraudulently assist female Estonian nationals in obtaining United States visas to enter the United States in order to work as erotic masseuses in a massage parlor located in Boston, Massachusetts, managed by Valdma.

5.  Your affiant has reviewed the transcripts of consensually monitored meetings and telephone calls during which Valdma and Kaljuvee each discussed with the CW the arrangements for the CW to obtain a non-immigrant United States visa. Together, Valdma and Kaljuvee arranged for the CW to travel to the United States to work in Valdma's massage parlor. Your affiant has received information from other law enforcement personnel that Valdma provided financial resources for the travel and accommodations for the female Estonian visa recipients. The investigation also indicates that the visa recipients pay Valdma for their out of pocket expenses through earnings from working in the massage parlor.

6.  Your affiant has learned that, on February 25, 2003, Tallinn police conducted a consensually monitored meeting between the CW and Kaljuvee. I have reviewed the translated

transcripts of this meeting. During the meeting, Kaljuvee and the CW discussed what information Kaljuvee would need to provide to the United States Embassy in order to have a non-immigrant United States visa issued in the CW's name. Kaljuvee told the CW that his role in the scheme was to help obtain visas, purchase the airline tickets, and take care of any problems that arise in Estonia. Kaljuvee told the CW that he would provide the CW with evidence that Kaljuvee knew was false. He told her that he would provide her with false documentation reflecting that she had a job in Estonia. Furthermore, Kaljuvee would introduce her to an individual who would pose as the CW's husband, who would be applying for a visa in his own name. Additionally, Kaljuvee told the CW that she would be required to repay Valdma for the costs of the visas and airline tickets. Kaljuvee further stated to the CW that the client cost of the erotic massage would be $100.00 in United States dollars, but the CW's salary would have to be discussed with Valdma personally.

7. Your affiant has learned that, on April 2, 2003, the Tallinn police conducted a consensually monitored telephone call between the CW in Estonia and Valdma in Boston, Massachusetts. I have reviewed the translated transcripts of this conversation. During the conversation, Valdma informed the CW that in order to assist in obtaining the non-immigrant visa that Kaljuvee was to procure, she was to provide false information on her United States non-immigrant visa application that she was planning to go on a vacation in Florida. Valdma explained to the CW that in order for her to receive a six month visa, the CW needed to apply for the visa with a male travel partner posing as her common law husband. Valdma explained to the CW that a woman he recruited to work in the United States was refused a visa because she did not know her fake husband's name.

8. During the April 2, 2003 telephone conversation, Valdma also discussed with the CW that the erotic masseuses presently working for him in Boston, Massachusetts, were performing five (5) or six (6) massages a day, with some sexual involvement. Valdma told the CI that after she arrived in Boston, Massachusetts, the CW would receive approximately $40.00 to $200.00 per massage.

9. Your affiant has also learned that, on April 2, 2003,

Tallinn Police monitored a meeting in Estonia between the CW, Kaljuvee, and the man who was to pose as her common law husband. I have reviewed the translated transcripts of this meeting. During the meeting, Kaljuvee introduced this man to the CW as her arranged common law husband for the visa application process. Kaljuvee also told the CW to use the same address as this man on the non-immigrant visa application. Kaljuvee also told the CW to give him her passport and that he would find her an employer to falsely list on the CW's non-immigrant visa application.

10. Your affiant has also reviewed the translated transcripts of April 15, 2003, consensually monitored telephone call between the CW in Estonia and Valdma in Boston, Massachusetts. During the conversation, Valdma provided the CW with false information to provide the United States Embassy on her visa application and during any subsequent interview. Specifically, Valdma informed the CW that he would provide her with false information such as addresses, hotels, and length of the CW's stay in the United States. Valdma told the CW that he would provide this information to Kaljuvee.

11. On or about April 14, 2003, the CW and arranged common law husband each submitted fraudulent visa applications to the United States Embassy in Tallinn, Estonia at Kaljuvee and Valdma's direction. The CW's application contained false information as dictated by Kaljuvee and Valdma. Additionally, Kaljuvee gave her a fraudulent letter to include as part of the application certifying her employment as a secretary at Kismet Services, Inc., a company in Tallinn. As part of the investigation, the CW and arranged common law husband were issued United States visas on or about April 30, 2003 at the United States Embassy in Tallinn, Estonia.

12. On May 19, 2003, Valdma traveled to Tallinn, Estonia in order to escort the CW back with him to Boston, Massachusetts. Valdma and the CW departed Tallinn on May 29, 2003, and traveled by ferry to Helsinki, where they boarded a flight for New York City. As part of this investigation, upon arrival in New York City, the CW was denied entry to the United States and returned to Tallinn, Estonia. Valdma was informed that he would have to depart secondary inspection and proceed through the customs

checkpoint. Valdma left customs and departed to Boston.

13. After her arrival in New York City, your affiant interviewed the CW who stated that while riding on the ferry to Helsinki, Valdma informed her that the erotic masseuses presently working for him in Boston, Massachusetts were having sexual intercourse with clients. The CW informed your affiant that she was never employed by the company listed on the employment letter provided to her by Kaljuvee and that her visa application was filled out with the false employment information and residence information provided to the CW by Kaljuvee.

14. After the CW was returned to Tallinn, Estonia, she made several consensual telephone calls to Valdma. I have reviewed the translated transcripts of these telephone calls. During a June 25, 2003 telephone conversation, Valdma told the CW that if the information on a visa application cannot be verified, the visa applicant will not allowed in United States. Valdma also told the CW that she was denied entry into the United States because she told the immigration inspector that she was a "nail technician." Valdma told the CW that on her return she should say instead that she owns a beauty salon. Valdma also told the CW that if she returns to the United States he will provide her with a male to travel with, possibly Kaljuvee.

15. Based upon the foregoing, your affiant submits there is probable cause to believe that between on or about February 27, 2003, and on or about June 25, 2003, Andres Kaljuvee and Roman Valdma and others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, and did commit acts to effect the object of the conspiracy, to wit, visa fraud in violation of Title 18, United States Code, section 1546(a), and in furtherance of the conspiracy, that is, at the United States Embassy in Tallinn, Estonia, they did knowingly possess, obtain, accept and receive a United States non-immigrant visa, a document proscribed by statute or regulation for entry into or evidence of stay or employment in the United States, knowing it to have been procured by means of a false claim or statement, or to have been otherwise procured by fraud, in violation of Title 18, United States Code, Section 371.

Brett R. Ramsey
Special Agent
Diplomatic Security Service
United States Department of State

Sworn to and subscribed before me this fourth day of August, 2003.

MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

6